THE DRY DOCK, EAST BROADWAY AND BATTERY RAILROAD COMPANY, THE EIGHTH AVENUE RAILROAD COMPANY, THE NINTH AVENUE RAILROAD COMPANY, THE SIXTH AVENUE RAILROAD COMPANY, APPELLANTS, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, RESPONDENT.

*The right of horse railroad companies to sprinkle sand on their tracks in the city of New York is subject to the control of the common council of the city — an injunction is not the proper remedy to enforce such right, even if an absolute one in the horse-railroad companies.*

Upon the hearing of appeals from interlocutory judgments sustaining demurrers to the complaints of each of the several plaintiffs, it appeared that each of the plaintiffs was a railroad corporation, created under the laws of this State to construct and operate street railroads in the city of New York; that each severally claimed the right to sprinkle sand upon their respective railway tracks, when the pavements became smooth and slippery, to make them more safe for use by the horses drawing the cars, and alleged that the safety of their horses and the speed and control of the cars were dependent upon this use of sand upon the tracks. The right or privilege to use sand upon their tracks, as that might become necessary to provide secure footing for their horses, between November first and April first, in each year, on receiving a permit from the mayor, was secured by an ordnance of the city, but an order had been issued by the police department of the city directing the police officers to prevent the

use of sand upon the tracks during other months of the year, and to arrest persons who might be engaged in its use during such months.

The plaintiffs commenced these actions to restrain the execution of this order, asserting their right to use sand during the months not included in the ordinance.

*Held*, that the judgments should be affirmed.

That the companies were entitled to use the streets, so far as that might be necessary for the construction of their roads and their subsequent use; beyond that they were subject to the control of the common council of the city, which had the general supervision over the use and management of the streets, the power to declare by ordinances the manner in which the streets should be used by the animals and cars of the company being expressly reserved to the common council by subdivisions 2 and 7 of section 86 of chapter 410 of 1882, consolidating the several statutes relating to the city.

That as, in any view of the matter, it would not be necessary to sand the tracks at all times, the case presented was not a proper one for the injunction asked for, as if granted it would leave to the discretion of the railroad officials the decision as to when the tracks did require to be sanded.

APPEALS from interlocutory judgments sustaining demurrers to the complaints of each of the several plaintiffs.

*John M. Scribner*, for the appellants.

*Francis M. Scott*, for the respondent.

DANIELS, J.:

Each of the plaintiffs is a railroad corporation created under the laws of this State to construct and operate street railroads in the city of New York. They severally claimed the right to sprinkle sand upon their respective railway tracks when the pavements become smooth and slippery, and might be made more safe in this manner for use by the horses drawing the cars. They were allowed to use sand upon their tracks, as that might become necessary to provide secure footing for their horses, between the first of November and the first of April in each year, on receiving a permit from the mayor. This right or privilege was created by an ordinance of the city adopted for that purpose. But what the plaintiffs desired to do was to use sand in like manner upon the tracks during the other months. But an order had been issued by the police department of the city directing the police officers to prevent the use of sand upon the tracks during these other months of the year, and to arrest persons who might be engaged in its use during such months.

The plaintiffs commenced these actions to restrain the execution

of this order, asserting the right on their part to use sand during the months not included in the ordinance, upon a general claim of right to that extent. And in support of their action it was alleged that the safety of their horses and the speed and control of the cars were dependent upon this use of sand upon the tracks. But the court at the trial of the demurrer to the complaints held otherwise, and that neither of the complaints stated facts sufficient to constitute a cause of action.

There can be no doubt but that an action might be maintained for an injunction to restrain the commission of unlawful acts which would be productive of a multiplicity of suits or irreparably disturb and derange the business of the plaintiffs. (*Third Avenue R. R. Co.* v. *Mayor*, 54 N. Y., 159; *People ex rel. Negus* v. *Dwyer*, 90 id., 402; *Poughkeepise Gas Co.* v. *Citizens' Gas Co.*, 89 id., 493, 497; *People* v. *Canal Board*, 55 id., 390.) But before it can be issued a clear legal right to it must be presented on the part of the plaintiff, and the existence of that right is denied in each of these cases. The action in favor of the Dry Dock, East Broadway, etc., Railroad Company, presents the grounds upon which this right has been asserted more favorably than either of the other actions, and it may, therefore, be more appropriately considered for the disposition of the appeals. This company was incorporated by chapter 512 of the Laws 1860, and by section 4 of the act, it was made the duty of the mayor, common council and officers of the city to do such acts within their respective departments as might be needful to promote the construction and protect the operation of the railroad. And it was declared further, that any act or thing done in violation of this act should be inoperative and void. And under this enactment the plaintiff claims to have become invested with the right to use sand in this manner upon its track without the liberty or assent of the common council or other officers of the city. But the enactment has not been made in such language as to sustain this position. All that has been required by it is, that the mayor, common council and officers of the city should promote the construction and protect the operation of the railroad. And this language is fully satisfied by permitting and protecting the construction of the railroad and its subsequent use and operation, and all that will be accomplished, although the city authorities may interfere, and in this manner pre-

vent the sanding of the track. Preventing that clearly in no manner prevents the construction or operation of the railroad, as that was provided for in the. act. That prevention violated no provision of the act, for all that it provided for in this respect was the construction, operation and use in the streets of the railroad. And those objects will be attained, although not as completely so, without sanding the tracks, as they will be, by doing so. What the charter designed, was to give to the company the right to use the streets so far as that might be necessary for the construction of its road and its subsequent use. Beyond that it was designed to subject the company to the control of the common council of the city having the general supervision over the use and management of the streets, This design is clearly evinced by the second section of the act. declaring that the railroad should " be constructed on the most approved plan for the construction of city railroads; and shall be run as often as the conveience of passengers may require, and shall be subject to such reasonable rules and regulations in respect thereto as the common council of the city of New York, may from time to time, by ordinance prescribe." This plainly was designed to retain for the common council all its authority over the streets through which the railroad should be constructed, except the rights created by the charter to use the streets, so far as that should be necessary for the construction and operation of the railroad. Beyond that the entire control has been reserved in this manner to the common council of the city, and that body has exercised its authority by the enactment of the ordinance mentioned in the complaint.

This construction of the charter is further supported by the powers conferred by the legislature upon the common council, which have now been expressed by subdivisions 2 and 7 of section 86 · of chapter 410 of. the Laws of 1882, consolidating the several statutes relating to the city. By subdivision 2 of this section power has been given to the common council to make ordinances, not inconsistent with the laws and the Constitution of the State, " to regulate the use of the streets, highways, roads and public places by foot passengers, animals, vehicles, cars and locomotives," and by subdivision 7 " to regulate and prevent the throwing or depositing of ashes, offal, dirt, etc., in the streets." The charter of the company,

as it has been considered, harmonizes entirely with these subdivisions of section 86 of the consolidating act, for while it secures to the company the right so to use the streets as to lay down and operate a railroad over them, it still reserves to the common council the power by ordinance to declare the manner in which the streets shall be used by the animals and cars of the company. The authority reserved to the common council is the same as that generally mentioned and included in the second section of the charter of the company, and in this manner it is the common council and not the courts that has been given the authority to prescribe and declare how the streets shall be used by the animals and cars of the company. It is true that the common council would have no authority for prohibiting the use of the streets by the company. The right to use them for the railway and the passage of the cars of the company has been paramountly secured, but subject to that the common council may regulate the manner in which the streets of the city shall be used by the animals and the cars employed upon the railroad. And it is under this authority that the ordinance has been passed and maintained, permitting the use of sand upon the railroads between the first day of November and the first day, of April in each year, and by its enactment in that form it operates as a prohibition on the company for using sand in this manner in either of the other months of the year. Such a prohibition is to be implied from the enactment creating the privilege limited in this manner. It is all that the common council deemed it proper to concede, and by making this concession the ordinance is to be construed as restricting the privilege to the period of time mentioned in it; and as this power of regulation has been given solely to the common council of the city, it must be exercised by it and not by the courts. The remedy of the plaintiff is to apply to that body for the liberty which it is the object of its suit to secure. In the complaints of the other three plaintiffs no special privilege of this nature has been claimed to be derivable from their charters. Their powers are certainly no broader or greater than those of the Dry Dock Company. And as that company has not the right without the assent of the common council to sprinkle sand upon its tracks during the months not included in the ordinance, it follows that these companies cannot claim that right.

The case appears to be not one for an injunction for another reason, and that is, that it is not at all times that the tracks are required to be sanded, but only when that may become a precautionary act, by reason of the pavements being worn so smooth as to prevent a secure footing for the horses used in drawing the cars. When they may become so smooth as to require the use of sand upon them, must be a matter of proof. The fact is one which, ordinarily, would become a subject of dispute. It might very well be asserted that the track was in that condition by the company when other persons, particularly the officers sought to be restrained, would deny that it was so, or that there was either necessity or propriety for using sand upon the tracks. And an injunction could not properly be issued, vesting the right to determine such a dispute in the officers of the railroad company. If it should be issued at all, it would necessarily be required to be expressed in such language, for it could not be made dependent upon a reference of the dispute, or the ascertainment of the fact, by any tribunal or body of officers, before the injunction itself should be restraining and operative. To secure the right to do what may prove to be necessary is not the office of an injunction, but of an ordinance of the city declaring what may, or may not be done in this respect, and prescribing what regulations the railroad company shall observe in using sand upon its tracks.

In neither case has the right to an injunction been sustained by the facts disclosed by the complaints, and the judgments should be affirmed, with costs of one appeal and the disbursements in each of them.

Brady, J., concurred ; Van Brunt, P. J., concurred in result.

Judgments affirmed, with costs of one appeal, and disbursements in both.